Mark Crabtree, OSB #015070
mark.crabtree@jacksonlewis.com
Daniel Moses, OSB #151935
daniel.moses@jacksonlewis.com
JACKSON LEWIS P.C.
200 SW Market St. Ste. 540
Portland, Oregon 97201
Telephone: (503) 229-0404
Facsimile: (503) 229-0405
      Of Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FRANCISCO GUTIERREZ, MOISES GUTIERREZ, and RAUL GUTIERREZ, individuals,<br><br>    Plaintiffs,<br><br>      vs.<br><br>VALLEYVIEW BLDG, INC., a domestic business corporation, and FADEY CHERIMNOV, an individual,<br><br>    Defendants. | Case No.: 3:18-cv-1701-HZ<br><br>**DEFENDANTS' TRIAL BRIEF** |

Pursuant to this Court's Jury Trial Management Order, Defendants Valleyview Bldg. Inc. and Fadey Cherimnov hereby submit their Trial Brief in anticipation of the trial scheduled for December 3, 2019, at 9:00 a.m., in Courtroom 15A of the United States District Court of Oregon, Portland Division, 1000 S.W. Third Ave., Portland, Oregon 97204.

Page 1 – **DEFENDANTS' TRIAL BRIEF**

## I.   INTRODUCTION

Plaintiffs' claims are: (1) violations of the FLSA's minimum wage requirements; (2) violations of the FLSA's overtime requirements; (3) violations of Oregon's minimum wage requirements; (4) violations of Oregon's overtime requirements; (5) violations of Oregon's final-pay requirements under ORS 652.140; (6) unlawful wage deductions; (7) federal trafficking in violation of 18 U.S.C. 1595; and (8) state trafficking in violation of ORS 30.867.  Specifically, Plaintiffs allege that Defendants failed to compensate them for time spent loading work trucks at Valleyview's shop before and after their work day.  Plaintiffs also claim that Defendants failed to pay them the half-time component for work hours over 40 per week.  They also claim that Defendants took improper payroll deductions from Plaintiffs' pay to recoup a loan.  They further claim that Fadey Cherimnov threatened them in order to secure their continued work for the Company.

Plaintiffs' claims will fail at trial because: (1) Plaintiffs' purported loading and unloading time did not occur, is barred by the Portal-to-Portal Act, and/or was *de minimus*; (2) Plaintiffs were accurately paid for all hours worked, including overtime hours; (3) Plaintiffs unquestionably received wages in excess of federal or state minimum wage requirements; (4) any repayments Plaintiffs made to money that Fadey Cherimnov loaned them were separate from and outside of any payroll reconciliations; and (5) there is zero evidence that Mr. Cherimnov threatened Plaintiffs, or that the alleged threats had the effect of compelling Plaintiffs to remain on the job.  Indeed, it was Plaintiffs who voluntarily resigned their employment after they decided to start a competing business.

## II.   SUMMARY OF RELEVANT FACTS

Fadey Cherimnov ("Cherimnov") owns and operates an excavation company, Valleyview Bldg, Inc. ("Valleyview" or the "Company"). Valleyview is based in Molalla, Oregon, and works on excavation projects throughout the Willamette Valley.  Primarily, Valleyview contracts with home builders to excavate large tracks of land for new subdivisions.

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)

Valleyview initially hired brothers Francisco Gutierrez ("Francisco") and Moises Gutierrez ("Moises"), as well as their uncle Raul Gutierrez ("Raul") (collectively, "Plaintiffs") in or around 2001. Francisco and Moises were employed as excavators, and Raul was an excavation assistant—hired at Francisco's insistence. Francisco frequently served as the job site foreman on excavation projects.

Valleyview's business slowed down during the 2008 recession, and this slowdown caused Valleyview to lay off the Plaintiffs. Francisco, however, kept in touch with Cherimnov, and frequently called Cherimnov to inquire about job opportunities. In August 2015, Cherimnov agreed to rehire Francisco. Francisco informed Cherimnov that he would need a loan to cover travel expenses to Oregon, and Cherimnov agreed to loan him approximately $6,000. Unbeknownst to Cherimnov, Francisco then embarked on an illegal effort to cross the U.S. border from Mexico, without authorization. Valleyview rehired Raul around the same time.

In June 2016, Francisco asked Cherimnov to rehire his brother, Moises. Cherimnov agreed. Francisco also requested a loan on his brother's behalf to cover Moises's travel expenses. Cherimnov loaned another $6,000 to Francisco, and Francisco arranged for his brother's travel to Oregon. Cherimnov requested only that Francisco make efforts to gradually repay the loans. Francisco agreed.

In February 2017, Francisco and Moises, who earned $18 and $17 per hour respectively at the time, told Cherimnov that they would not continue working for the Company unless Cherimnov increased their pay. Francisco also demanded that Valleyview pay at least a portion of Plaintiff's under the table, in cash. Hoping to avoid a work stoppage and keep the peace, Cherimnov reluctantly agreed to Francisco's demands. Effective February 2017, Francisco and Moises received raises to $23 per hour. In August 2017, Francisco demanded another raise, to which Cherimnov agreed. Effective August 2017, Francisco earned $25 per hour.

Raul's employment ended in August 2017, when Francisco fired him because he said the brothers no longer needed Raul's assistance. At the time of Raul's termination, he earned $14

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)

per hour.  Francisco and Moises both voluntarily quit on November 16, 2017, in order to form a competing excavation business.

## III.   LEGAL ISSUES FOR TRIAL

### A.  Minimum Wage Claims

Plaintiffs first allege they were not paid for pre-shift work time spent loading company vehicles and driving from Valleyview's office to various construction sites.  Based on their alleged uncompensated time, Plaintiffs assert that Defendants' violated applicable minimum wage requirements under the FLSA and Oregon law.  However, the evidence does not support any minimum wage claim.

As explained above, throughout the course of Plaintiffs' employment, they received compensation in two forms: a standard payroll check, and a cash payment.  Plaintiffs acknowledge they were paid at least their agreed upon rate of pay for all hours worked, save the claimed loading/unloading time.  Thus, for example, if Francisco worked 41 hours per week in March 2017, he will admit that he received payments of at least $738 [or $18 x 41].

Plaintiffs' contend that the claimed hours spent loading or unloading vehicles, which Defendants did not compensate, results in a minimum wage violation.  Plaintiffs' are incorrect on two fronts.  First, as discussed more fully below, the loading/unloading time was not compensable work time.  Second, even if it is considered compensable time, Plaintiffs cannot establish a minimum wage violation because the relevant unit for determining minimum wage compliance under the FLSA and Oregon law is the workweek as a whole, not the individual hour within the workweek.  OAR 839-020-0010(2); *Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884 (9th Cir. 2017).

In light of Plaintiffs' standard rate of pay during the time periods at issue, the evidence does not support a claim that Plaintiffs' weekly compensation as a whole, divided by the weekly hours they claim to have worked, resulted in a minimum wage violation.  To illustrate, the applicable minimum wages during the relevant time period were as follows:

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 I (503) 229-0405 (fax)

| Federal minimum wage (2009 – 2017) | $7.25 |
| Oregon minimum wage (9/24/16 – 6/30/17) | $9.75 |
| Oregon minimum wage (7/1/17 – 11/16/17) | $10.25 |

Thus, if Francisco worked 41 hours per week in March 2017, Defendants satisfied state and federal minimum wage requirements if Francisco received at least $399.75 for the week [41 x $9.75]. Yet, Francisco will admit he received, in this example, $738. If Francisco could prove that he also worked and was entitled to compensation for an additional 15 hours per week, as alleged in his complaint, there is still no minimum wage violation because his actual compensation ($738) exceeds the minimum requirement for the workweek as a whole (56 x $9.75 = $546).

Finally, Defendants are entitled to recover their fees incurred in defending against Plaintiffs' minimum wage claims, pursuant to ORS 653.055. The statute provides: "The court may award reasonable attorney fees to the prevailing party in any action brought by an employee [to recover minimum wages]." ORS 653.055(2).

### B. Overtime Wage Claims

Plaintiffs also allege that two types of overtime violations. First, Plaintiffs contend that they performed work at the start and end of their workday, loading and unloading vehicles, that was not compensated (the "off-the-clock" claim). Second, Plaintiffs contend that when they were paid for overtime hours worked, they received compensation at their standard rate of pay and Defendants failed to pay the half-time component required by the FLSA and Oregon law (the "half-time" claim). Both claims will fail based on the facts Defendants will present at trial.

#### 1. *Plaintiffs' Off-the Clock Claim*

With respect to the off-the-clock claim, the evidence will establish that Valleyview has a few pickup trucks that Cherimnov permits employees to drive to job sites. There was no expectation or requirement on Plaintiffs that they drive Valleyview's truck. Plaintiffs just as

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 l (503) 229-0405 (fax)

easily could have driven their personal cars to the job site. Francisco, however, insisted on driving a Valleyview truck, either because it saved him gas money, saved him from the wear and tear on his personal vehicle, or perhaps he viewed the Company's truck as more reliable that his personal vehicle. When Francisco drove a Company vehicle, Moises and, at times, Raul, tagged along.

There was no required "loading" or "unloading" of tools or materials. Those items were situated at the job sites at the start of each project. Materials were delivered to the job site during the course of the project. In the event an employee wishes to drive a Company vehicle to the job site, the only time expended is parking the employee's personal vehicle at the Valleyview shop and transferring to the Company truck. While employees may hang around the shop, perhaps to wait for another employee to join them, there is no work involved. Employees commence working when they arrive at the job site. The same is true when employees return the Company truck at the end of the shift.

### *a. Portal-to-Portal Act*

The evidence will establish that Plaintiffs' off-the-clock claims are barred by the Portal to Portal Act, 29 U.S.C. § 254(a)(1)-(2). The statute, which specifies what types of activities are not compensable, states that "riding, or traveling to and from the actual place of performance of the principal activity" is not hours worked. *See Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057 (9th Cir. 2010) ("Rutti's morning activities do not appear to be integral to his principal activities. Most of his activities – 'receiving, mapping, and prioritizing jobs and routes for assignment' – are related to his commute. Under the FLSA, commuting is presumptively noncompensable, and is clearly distinct from Rutti's principal activities for Lojack.").

Additionally, the fact that the truck was a Company vehicle does not change this analysis. *See Burton v. Hillsborough Cty.*, 181 F. App'x 829, 835 (11th Cir. 2006) ("The mere use of an employer-owned vehicle does not eliminate this distinction between incidental or non-compensable travel and required or compensable travel."); *Jackson v. BECCM Co.*, No.

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)

3:09cv00054, 2010 U.S Dist. LEXIS 576, at *14-15 (W.D. Va. Jan. 5, 2010) (Defendant's requirement that plaintiff return to the corporate office at the end of the workday "may well have been in place only to the extent that plaintiff chose to partake in the benefit of employer-provided transportation," and "The pleadings do not make clear that the plaintiff was absolutely required to return to his employer's office at the end of the day. Rather, the entirety of that requirement may well turn on the employee's voluntary decision to use an employer-provided vehicle, rather than to use his own transportation.").

Plaintiffs' alleged off-the-clock work related entirely to their commute, and thus is presumptively noncompensable. The alleged work activities were clearly distinct from Plaintiffs' principal activity of excavation. As in *Burton* and *Jackson*, Plaintiffs' voluntary decision to use the Company vehicle rather than their own vehicle does not make the time compensable.

Plaintiffs have asserted that Oregon has not adopted the Portal to Portal Act. Plaintiffs' assertion is, of course, not accurate. Oregon's Bureau of Labor & Industries ("BOLI") has promulgated rules that track the exclusions provided for under the Portal to Portal Act. With respect to travel time, OAR 839-020-0045 explains that normal travel from home to work is not work time, with the following exception: "Where an employee is <u>required</u> to report at a meeting place to receive instructions or to perform other work there or to pick up and carry tools, the travel from the designated place to the work place is part of the day's work and must be counted as hours worked." *Id.* § (3). The converse is also true. Where the employee is <u>not</u> required to report to a designated place, <u>not</u> required to pick up tools, and <u>not</u> required to perform other work, the time is not compensable. Rather, the work is not work time, and the ordinary commute is noncompensable.

### b. *De Minimis Doctrine*

Even if Plaintiffs present evidence that they picked up a tool from time to time, they cannot recover compensation for their pre- and post-shift activities as a result of the *de minimis*

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)

doctrine. In *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984), the Ninth Circuit discussed the factors to consider when evaluating FLSA claims challenged by a *de minimis* defense: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. *See Lindow*, 738 F.2d at 1062 (concluding that "the 7 to 8 minutes spent by employees reading the log book and exchanging information, even if not preliminary, was *de minimis* and therefore not compensable"); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.").

In *Alvarado v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 48935 (N.D. Cal. 2008), the plaintiff regularly waited in the security line for "a couple of minutes" before she could leave her workspace. *Id.* at *3. The Court found that during the plaintiff's wait time, employees generally engaged in "noncompensable activities after the end of their shift but before leaving the warehouse, such as shopping, attending the restroom, socializing, walking time and other personal activities." *Id.* at *4. The court thus held that the wait time was *de minimis* and not compensable.

Here, the evidence will establish any off-the-clock work was minutes in duration – or, approximately the amount of time it would take someone to park their personal vehicle at the Valleyview shop, move their personal belongings to the Company truck, and leave in the truck. To the extent any additional time was involved, Plaintiffs were not engaged in work. Rather, they were engaged in noncompensable activities such as voluntarily waiting for a colleague to arrive at the shop, socializing, or other personal activities.

### 2. *Plaintiff's Half-Time Claim*

State and federal law requires employers compensate nonexempt employees at the rate of 1.5 times the employee's regular rate of pay for all hours over 40 per week. Plaintiffs admit they

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)

received their regular rate of pay for all hours they reported working. Plaintiffs assert
Defendants failed to pay them the "0.5" portion of the 1.5 calculation.

Defendants deny that Plaintiffs were not paid the correct amounts. The problem in this
case is that Valleyview entrusted to Francisco, as the foreman at the worksite, the responsibility
for reporting to Cherimnov the compensation due to Francisco, Raul, and Moises. Beginning
with Plaintiffs' threats to walk off the job in February 2017, Valleyview acceded to Francisco's
demands for a raise, to be paid partially in cash, and to drive the Company vehicle to job sites.
When Valleyview met Francisco's demands, there was a shift in the power dynamics between
Cherimnov and his foreman, Francisco. Francisco essentially bullied Cherimnov into a working
agreement wherein Francisco kept track of his, Moises's, and Raul's work hours and told
Cherimnov how much they needed to be paid, as well as how much the Plaintiffs' wished to be
paid in cash. Cherimnov went along with Francisco's scheme because he felt he had to, to keep
the peace, to keep the jobs running, and to meet the demands of Valleyview's clients.

Against this backdrop, Cherimnov acknowledges that Valleyview's time records for the
Plaintiffs are likely incomplete and inaccurate. Cherimnov relied on Francisco to provide a
weekly accounting of any compensation (rather than hours) due to each Plaintiff. Valleyview
paid all the compensation demanded by Francisco. If Valleyview underpaid Plaintiffs for the
half-time component of the overtime rate, it was only because all payments were made based on
Francisco's calculations, at Francisco's insistence. For those reasons, Valleyview disputes that
Plaintiffs can now recover on their half-time claim.

Recognizing that it is an employer's obligation to maintain payroll records, Valleyview
has attempted to calculate all overtime hours worked by Plaintiffs during the applicable period of
time, simply to understand the amount of wages Plaintiffs seek to recover. We believe the
evidence will show Plaintiffs worked the following amounts of overtime:

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)

| Plaintiff | Total OT Hours Allegedly Worked |
|-----------|--------------------------------|
| Francisco (9/24/16 – 11/16/17) | 1,032.5 |
| Moises (9/24/16 – 11/16/17) | 493.8 |
| Raul (9/24/16 – 7/15/17) | 383.5 |

Consequently, the half-time component of Plaintiffs' overtime claims over which Plaintiffs insist on going to trial over is approximately:

| Plaintiff | OT Half-Time Wages Allegedly Owed |
|-----------|-----------------------------------|
| Francisco | $9,504.75 |
| Moises (9/24/16 – 11/16/17) | $4,699.45 |
| Raul (9/24/16 – 7/15/17) | $2,685.48 |

Of course, if Plaintiffs prove at trial that they are owed overtime wages, despite Francisco's bullying tactics and insistence that he tell Cherimnov how much to pay the Plaintiffs each week, Plaintiffs will also seek to recover liquidated damages and penalties. Defendants dispute that its conduct was willful and therefore denies that liquidated damages or penalty wages are appropriate.

**C.      Payroll Deduction Claim**

Plaintiffs also claim that Valleyview made unlawful deductions from their pay to recoup money that Cherimnov loaned to Francisco and Moises. ORS 652.610 makes it unlawful to "withhold, deduct or divert" any portion of an employee's wages. The problem with Plaintiffs' theory is that the evidence will establish that Francisco made loan repayments separate and apart from Valleyview's payroll process. Valleyview made no payroll deductions related to Plaintiffs' loans. Rather, at various times after Francisco borrowed $12,000 from Cherimnov, Francisco met with Cherimnov and made cash payments towards paying off the loans. The parties' agreement does not implicate ORS 652.610.

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 l (503) 229-0405 (fax)

**D.    Trafficking Claims**

Finally, Francisco and Moises allege claims under 18 U.S.C. §1595 and ORS 30.867 for "human trafficking." The state and federal laws are similar, each requiring Plaintiffs to prove Defendants knowingly obtained the labor or services of a person by force, threats of force, serious harm, or threats of serious harm, or threats to report the person for arrest or deportation.

Plaintiffs' deposition testimony belies their ability to prevail on their trafficking claims. The evidence at trial will be that Defendants did not threaten or force Plaintiffs to continue working. Indeed, Francisco sought out work with Valleyview following prior employment with the Company. Those are not the acts of someone who felt bullied into working. In any case, Plaintiffs did not continue working for Valleyview because of any alleged threats. The evidence will establish that Francisco and Moises voluntarily resigned, without incident, when they identified a better opportunity.

**IV.    CONCLUSION**

Defendants intend to offer evidence at trial that Plaintiffs were appropriately compensated for their work with Valleyview. Defendants will further demonstrate the entire lack of evidence concerning Plaintiffs' claims for trafficking.

DATED: October 25, 2019.                          Respectfully submitted,

JACKSON LEWIS P.C.

By: _____
Mark Crabtree, OSB #015070
Daniel J. Moses, OSB #151935

Attorneys for Defendants

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 l (503) 229-0405 (fax)

## DECLARATION OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' TRIAL BRIEF** via:

☐  Electronic Mail

☐  US Postal Service

■  CM/ECF

☐  Facsimile Service

☐  Hand Delivery

☐  UPS

as follows on the date stated below:

D. Michael Dale
Law Office of D. Michael Dale
PO Box 1032
Cornelius, OR 97113
michaeldale@dmichaeldale.net

Mayra A. Ledesma
Northwest Workers' Justice Project
812 SW Washington St., Ste. 225
Portland, OR 97205
mayra@nwjp.org

*Attorneys for Plaintiff*

DATED this 25th day of October, 2019.

By: s/ Delores Petrich
Delores Petrich

4845-3168-6568, v. 1

DECLARATION OF SERVICE

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405 (fax)