**Mayra A. Ledesma,** OSB #183942
mayra@nwjp.org
Northwest Workers' Justice Project
812 SW Washington St, Suite 225
Portland, OR 97205
Telephone: (503) 525-8454
Facsimile: (503) 946-3029

**D. Michael Dale**, OSB #771507
michaeldale@dmichaeldale.net
Law Office of D. Michael Dale
P.O. Box 1032
Cornelius, OR 97113
Telephone: (503) 357-8290
Facsimile: (503) 946-3089

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**FRANCISCO GUTIERREZ, MOISES GUTIERREZ** and **RAUL GUTIERREZ,** as individuals,

Plaintiffs,

v.

**VALLEYVIEW BLDG, INC.**, a domestic business corporation, and **FADEY CHERIMNOV**, an individual,

Defendants.

**Civil No.:** 3:18-cv-01701-HZ

**PLAINTIFFS' AMENDED TRIAL MEMORANDUM**

## I. INTRODUCTION

This case involves disputes over unpaid wages, non-payment of overtime wages, wrongful deductions and human trafficking. Francisco Gutierrez, Moises Gutierrez, and Raul Gutierrez (collectively "Plaintiffs") performed work as excavators for Valleyview Bldg, Inc. and

Fadey Cherimnov (collectively "Defendants"). The facts elicited at trial will show that it was Defendants' policy to pay only straight time for any hours over forty in a work week. It was also Defendants' policy not to compensate Plaintiffs for any time that was spent working at Defendants' excavation company headquarters and for the travel time spent traveling from Defendants' shop to the job sites. The facts will also show that Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez Flores suffered severe emotional distress after being trafficked into the United States from their home country, Mexico, by Defendants, and after being threatened and coerced to continue to work for Defendants after asking for better wages because Defendants refused to pay proper wages. Plaintiffs should recover their unpaid overtime premium and any additional unpaid wages spent working at the Defendants' headquarters and thereafter traveling to each job site, be paid for the full number of hours they worked, statutory penalties associated with each respective wage violation, damages for their emotional distress, punitive damages, and attorneys' fees and costs.

## II. STATEMENT OF FACTS

### A. Recruitment of Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores and Plaintiffs' employment terms

In 2015 when Defendants needed highly skilled employees to perform excavation work, they paid to relocate Plaintiff Francisco Gutierrez-Flores to work for them in Woodburn, Oregon from Guanajuato, Mexico. Francisco Gutierrez-Flores began working in August 2015, for an agreed straight-time hourly rate of $17.00.[1] In May 2016, Defendants also paid to relocate his brother, Plaintiff Moises Gutierrez-Flores to Woodburn, Oregon from Guanajuato, Mexico to work for them. Plaintiff Moises Gutierrez-Flores began working on June 26, 2016, for an agreed straight-time hourly rate of $17.00.

[1] Relevant to this lawsuit is any time that Plaintiff Francisco Gutierrez performed work after September 24, 2015.

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

During his employment with Defendants, Plaintiff Francisco Gutierrez-Flores received three increases to his straight-time pay. The first was on January 1, 2017, to an agreed straight-time hourly rate of $19.00. The second was on March 1, 2017, to an agreed straight-time hourly rate of $23.00. The last was on August 16, 2017, to an agreed straight-time hourly rate of $25.00.

During his employment with Defendants, Plaintiff Moises Gutierrez-Flores received one increase to his straight-time pay. His pay was increased on February 15, 2017, to an agreed straight-time hourly rate of $23.00.

Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores performed work for Defendants until December 2, 2017.

Defendants also hired Plaintiff Raul Gutierrez-Ledesma on September 25, 2015, for an agreed straight-time hourly rate of $14.50. Unlike his nephews, Plaintiff Raul Gutierrez-Ledesma was residing in Oregon at the time he was hired by Defendants to perform excavation work. He had a break in his employment with Defendants from September 11, 2016, to March 13, 2017. Plaintiff Raul Gutierrez-Ledesma worked for Defendants up until July 14, 2017. During his employment with Defendant, he received two decreases to his straight-time hourly rate. The first was on April 1, 2017, to a straight-time hourly rate of $13.00. Defendants reverted to a $14.50 hourly rate from April 15, 2017, to April 30, 2017. After May 1, 2017, Defendant paid him a straight-time hourly rate of $14.00 until he stopped working for them in July of that year.

**B. Plaintiffs' hours spent working over 40 in any given workweek**

Defendants did not pay any overtime premium for hours over forty hours a week. Defendants did pay Plaintiffs in cash for the time over forty hours per week that Plaintiffs

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

worked on the actual jobsites at their regular hourly rate, without any overtime premium. They did this by including enough fewer hours in Plaintiffs' regular pay checks to account for the overtime hours at straight time pay, and then giving that money to Plaintiffs in cash. Plaintiff Francisco Gutierrez-Flores worked 2,082.9 hours over 40 in any given workweek. From September 24, 2015, to December 25, 2016, he worked a total of 1,638.4 hours over 40 in any given workweek, but was only paid $17.00 per hour by Defendants for those hours. Defendants owe him $10,446.98 for the half-time overtime premium they failed to pay. From December 26, 2016, to February 26, 2017, he worked 48.6 hours over 40 in any given workweek, but was only paid $19.00 per hour by Defendants for those hours. Defendants owe $462.05 for the half-time overtime premium they failed to pay. From February 27, 2017, to August 13, 2017, he worked a total of 244 hours over 40 in any given workweek, but was only paid $23.00 per hour by Defendants for those hours. Defendants failed to pay him $2,805.43 for the half-time overtime premium. From August 14, 2017, to December 2, 2017, he worked a total of 151.9 hours over 40 in any given workweek, but was only paid $25.00 per hour by Defendants for those hours. Defendants failed to pay him $1,899.17 for the half-time overtime premium.

Plaintiff Moises Gutierrez-Flores worked 1,059.8 hours over 40 in any given workweek while he was employed by Defendants. From June 16, 2016, to February 15, 2017, he worked a total of 625.8 hours over 40 in any given workweek, but was only paid $17.00 per hour by Defendants for those hours. Defendants owe $4,040.31 for the half-time overtime premium they failed to pay. From February 16, 2017, to December 2, 2017, he worked 434 hours over 40 in any given workweek, but was only paid $23.00 per hour by Defendants for those hours. Defendants owe $4,991.23 for the half-time overtime premium they failed to pay.

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

Plaintiff Raul Gutierrez-Ledesma worked 1,041.6 hours over 40 in any given workweek he was employed by Defendants. From September 25, 2015, to March 31, 2017, he worked a total of 679.5 hours over 40 in any given workweek, but was only paid $14.50 per hour by Defendants for those hours. Defendants owe him $4,926.35 for the half-time overtime premium they failed to pay. From April 1, 2017, to April 14, 2017, he worked a total of 12.0 hours over 40 in any given work week, but was only paid $13.00 per hour by Defendants for those hours. Defendants owe him $77.85 for the half-time overtime premium they failed to pay. From April 14, 2017, to April 30, 2017, he worked a total of 27.2 hours, but was only paid $14.50 per hour by Defendants for those hours. Defendants owe him $197.55 for the half-time overtime premium they failed to pay. From May 1, 2017, to July 16, 2017, he worked a total of 122 hours over 40 in any given work week but was only paid $14.00 per hour by Defendants for those hours. Defendants owe him $853.88 for the half-time overtime premium they failed to pay.

**C. Time spent loading and unloading at Defendants' headquarters and travel time to and from Defendants' headquarters and the jobsites**

Plaintiffs performed excavation-related work for Defendants at various job sites, including Portland, Silverton, Sherwood, Mollala, Albany and in Woodburn at Defendant Valleyview Bldg, Inc.'s headquarters (referred to by Plaintiffs and Defendants as "Defendants' shop"). Defendants required Plaintiffs to meet at the shop prior to departing to their assigned jobsite. Most of the time, Plaintiffs worked together. However, there were times when Plaintiffs worked at different job sites.

It was Defendants' policy to pay only for time spent at the jobsite, not any time spent at their shop loading and unloading equipment, fuel and tools into Defendants' work vehicles. Plaintiffs were then required to drive to the job sites and were not paid for that time, either. The

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

only exception to this policy was time that was spent at Defendants' shop performing mechanic work on the excavation equipment. And, even then, this exception was not consistent. There were times when Plaintiffs, after working long hours at the job sites, returned to Defendants' shop and worked late into the night. This time was rarely accounted for by Defendants.

**D. Deductions taken from pay of Plaintiffs' Francisco Gutierrez-Flores and Moises Gutierrez-Flores**

During many pay periods, Defendants deducted amounts from the pay of Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores to recoup Defendants' costs in paying for Plaintiffs' transportation to the United States. These deductions were made without any written authorization from either of the Plaintiffs.

**E. Threats of physical harm to Plaintiffs' Francisco Gutierrez-Flores and Moises Gutierrez-Flores and their families and their emotional distress**

Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores were unhappy with the low-wages and no overtime they received for the work they did for Defendants, as compared to others in the industry. However, they did not believe that they could not quit because Defendants used the cost of relocating them as the reason they should stay. To date, Defendants see nothing wrong with their position and view Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores as ungrateful. In fact, whenever these Plaintiffs complained about their low-wages, Defendant Fadey Cherimnov would get mad and yell at them.

Once Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores started building up the courage to leave, Defendant Cherimnov began threatening them and their families in Guanajuato, Mexico with physical harm. The threats escalated and tensions became high after these threats to their person and families were made. Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores used all precautions and relocated themselves and their families to an

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

undisclosed location to Defendants. Sergio Gonzalez, Plaintiffs' cousin, hid them in his home in Portland, Oregon. The families in Mexico were also moved for their safety.

A telephone conversation was recorded between Plaintiffs Francisco Gutierrez-Flores and Defendant Fadey Cherimnov where Defendant Fadey Cherimnov said that "a person who is going to do a bad thing will come and I will not do anything" in addition to other threats, including deportation threats.

Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores, being from Guanajuato, a state in Mexico that experiences cartel violence, became very worried and were mentally anguished by the threats they received from Defendants.

Even after Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores got the courage to quit in in December 2, 2017, Defendants harassed them by stalking them at their place of residence and their new jobs in order to attempt to coerce them to continue to perform work for them.

## III. ARGUMENT

Plaintiffs will show at trial that Defendants violated their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*., ("FLSA"), and Oregon Minimum Wage and Overtime Laws (O.R.S. §§ 652.140, 652.150, 653.025, 653.055, 653.261) covering unpaid overtime wages and penalties for work-related time spent loading, traveling, unloading, and for not paying overtime premiums. They will also show violations of Oregon's Unlawful Deduction law (ORS 652.610, 652.615). Finally, they will prove that they should recover under the Trafficking Victims Protection Reauthorization Act of 2003 (18 U.S.C. §§ 1589, 1595) and Oregon Trafficking Laws (O.R.S. §§ 163.263, 163.264, 163.266, 30.867), which provide for general and

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

special damages, including for the emotional distress of Francisco Gutierrez-Flores and Moises Gutierrez-Flores, and for punitive damages.

**A. Plaintiffs were "employed" by each of the Defendants as the term is used in the Fair Labor Standards Act and adopted by Oregon Wage Law.**

Defendants concede that Plaintiffs were employed by Defendant Valleyview Bldg, Inc., but deny that Defendant Fadey Cherimnov employed Plaintiffs. Defendants will maintain that Fadey Cherimnov was an agent of Defendant Valleyview Bldg, Inc. and, as such, has no personal liability for the corporation's actions that he controlled and implemented.

However, FLSA has a very inclusive definition of "employ," drawn from the turn of the century state child labor statutes. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947); *Nationwide Mut. Ins. Co v. Darden*, 503 U.S. 318, 322 (1992). This broad definition encompasses relationships not considered "employment" at common law. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). The FLSA definition of employ is of a "striking breadth." *Darden*, 503 U.S. at 322-24, making it "the broadest definition [of employ] that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting the FLSA's principal sponsor, Senator Hugo Black, 81 Cong. Rec. 7657 (1937)).

Where an individual exercises "control over the nature and structure of the employment relationship" or "economic control" over the relationship, that individual is an employer within the meaning of the Act and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1998) (citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983)). In this case, Defendant Fadey Cherminov had an ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

hire and fire employees; the power to determine salaries; and the responsibility to maintain employment records.

Significantly, 29 U.S.C. § 203(d) provides that "any person acting directly or indirectly in the interest of an employer in relation to an employee" is an employer under the FLSA. The evidence will clearly show that Defendant Cherminov so acted on behalf of Defendant Valleyview Bldg, Inc. *See Sanchez-Calderon v. Moorhouse Farms*, 995 F. Supp. 1098 (D. Or. 1997); *Estevez v. Hayes*, 1990 WL 605076, 128 Lab. Cas. ¶ 33,134, (D. Or. 1990).

**B. Plaintiffs were not paid the wages to which they were entitled.**

The crux of this case is how many hours Plaintiffs worked for Defendants. Defendants were required to keep accurate wage and hour records for each employee. O.R.S. § 653.045; FLSA, 29 C.F.R. Part 516. Unfortunately, they did not do so, and the parties will be unable to present comprehensive payroll records that comply with these standards. However, Plaintiffs will demonstrate that Defendants often paid Plaintiffs for far fewer hours than Defendants' recorded as having been worked. *See* Exhibits 1-12,15-17.

Long-standing case law instructs that where "employer's [time] records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . the solution . . . is not to penalize the employee" but to allow employees the benefit of "a just and reasonable inference" with regards to the amount and extent of their work. *Anderson v. Mount Clemens Pottery*, 328 U.S. 680, 687; *Chard v. Beauty-N-Beast Salon*, 148 Or.App. 623, 631 (1997) (adopting the *Mt. Clemens Pottery* standard as to Oregon wage and hour laws). Here, Plaintiffs will demonstrate a just and reasonable inference as to the hours they worked relying on the following sources: a) the fragmentary payroll records that Defendants did provide; b) contemporaneous notes of hours worked maintained by Francisco and Moises Gutierrez Flores; c) cellphone data derived from

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

Plaintiff Francisco Gutierrez-Flores's mobile phone as evidence of Plaintiffs' actual start and stop time by looking at the data from the geolocation associated with Defendants' headquarters; d) Plaintiffs' testimony. *See* Exhibit No. 36.

These records, and inferences drawn therefrom, will establish several elements of nonpayment of wages. 1) Defendants refused to pay any overtime premium for time worked in excess of forty hours per week. 2) Defendants also admit that they did not pay for the time Plaintiffs loaded and unloaded work vehicles at their headquarters and then drove the work vehicles to each job site. Plaintiffs will testify and submit Exhibit No. 27, establishing that it was Defendants' policy not to pay work-related travel time or the one-half time premium for overtime hours. 3) Finally, the Plaintiffs' regular paychecks often reflect payment for fewer hours than they worked.

**C. Defendant failed to pay overtime wages as lawfully required.**

Defendants violated Oregon's overtime wage law, O.R.S. § 653.261, and its attendant regulation, OAR 839-020-0030(1), as well as 29 U.S.C. § 207, by failing to pay one-and-one half times the regular rate of pay for hours worked in excess of forty hours per week. The evidence will show that Plaintiff Francisco Gutierrez-Flores is owed 2,082.9 hours of overtime that were not paid at one-and-one-half times his regular rate. Plaintiff Moises Gutierrez-Flores worked 1,059.8 hours of overtime that were not paid at one-and-one-half times his regular rate. Raul Gutierrez-Ledesma worked 1,041.6 hours of overtime that were not paid at one-and-one-half times his regular rate. Indeed, Defendants' written policy was not to pay overtime premium pay. They have provided no evidence proving overtime premium pay was included. Defendants should therefore be found liable to Plaintiffs for the additional one-half times their regular rate of pay for the hours of overtime they worked, but were only paid straight time. Plaintiffs also seek

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

penalty damages under O.R.S. §§ 653.055, 652.140, 652.150, and liquidated damages under 29 U.S.C. 216(b), in addition to their unpaid overtime wages.

**D. Defendants improperly failed to pay for time spent loading and unloading trucks or for traveling from Defendants' headquarters to their worksites.**

Plaintiffs will testify that their daily work began when they reported to the Defendants' headquarters in Woodburn. At this site, they normally loaded any tools needed for the day, filled fuel tanks for the heavy equipment they would be using, and then drove one or more of Defendants' trucks to the worksite for the day. Usually, Francisco Gutierrez Flores drove. On occasion, Moises would drive a truck. Defendants did not regard any time spent before actually arriving at the daily work to be paid time.

Defendants will maintain that they do not owe Plaintiff for any hours spent loading and unloading work vehicles at their headquarters and thereafter traveling to each of their assigned worksites. Defendants' reasoning is that transportation in Defendants' truck was not mandatory and any work done at the headquarters was incidental. Supposedly, Plaintiffs volunteered and therefore their work day did not begin until they arrived at the day's work site.

However, there are several problems with this argument. Plaintiffs will show that the fuel and tools transported each day from headquarters to the job site were necessary and indispensable to their work. At least as to the drivers of these trucks, "An employee who drives a . . . truck . . ., or any employee who is required to ride therein as an assistant or helper, is working while riding . . . ." 29 C.F.R. § 784.41. And under the FLSA, where employees are required to report to a designated meeting place to receive instructions, pick up tools, gas-up or service vehicles or undertake other similar work-related activities, travel time from that designated place to the work site is compensable. 29 C.F.R. §785.38; OAR 839-020-0045. Travel is also compensable if it is undertaken on behalf of the employer, *e.g.* transporting

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

materials or equipment to be used at the worksite (including the vehicle itself) or transporting other employees to the worksite. 29 C.F.R. §790.7(d).

Most of the restrictions on the compensability of travel time stem from the federal Portal to Portal Act. However, Oregon never adopted the Portal to Portal Act or its underlying principles. *Margulies v. Tri-County Metropolitan Transp. Dist. of Oregon*, 25 Wage & Hour Cas.2d (BNA) 91; 2015 WL 4066654 (D. Or. July 2, 2015). OAR 839-020-0040(2) requires that employers pay overtime even if the employer did not specifically request the work to be performed or the work was performed without authorization. Oregon regulations do specify that normal home to work travel is not compensable work time. OAR 839-020-0045(1). However, travel from Defendants' shop to the work site is not *home* to work travel.

Plaintiffs are also seeking the unpaid overtime wages, to the extent that travel and loading and unloading time spent by Plaintiffs resulted in additional overtime work during a work week. Plaintiffs also seek penalty damages under O.R.S. §§ 653.055, 652.140, 652.150, and liquidated damages under 29 U.S.C. 216(b), in addition to their unpaid overtime wages.

**E. Defendants improperly deducted from the payroll of Plaintiffs Francisco and Moises Gutierrez-Flores to recover the costs of their transportation to Woodburn from Mexico.**

As noted above, Defendants paid for the cost of transportation of the Gutierrez brothers from Mexico to Woodburn. The evidence will show that Defendants periodically made deductions from their pay to recoup these costs. These deductions were not authorized in writing in violation of ORS 652.610. Plaintiffs Francisco Gutierrez-Flores and Moises Gutierrez-Flores are entitled to recover actual damages or statutory damages of $200.00 for each such deduction. ORS 652.615.

**F. Plaintiffs are entitled to distinct penalties for violations of O.R.S. §§ 652.150 and 653.055.**

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

Oregon law provides that "[w]here there are two separate statutory schemes and two separate remedies, each with its own purpose, an employer who violated both laws is liable for the penalties provided by each." *Hurger v. Hyatt Lake Resort, Inc.*, 170 Or. App 320, 323 (2000). Defendants' violated Oregon statutes in two distinct ways. It violated overtime wage law and failed to promptly pay Plaintiffs on termination pursuant to ORS §§ 652.150 and 653.055. Plaintiffs are therefore entitled to statutory damages in the amount of 240 times their hourly rate of pay for *each* violation. ORS §§ 652.150(1), 653.055.

**G. Defendants violated the TVPA by threatening physical force and to have Plaintiff's removed from the country if they did not continue to work for Defendants.**

Under the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. § 1589 it is illegal to:

> (a) Knowingly . . . obtain [ ] the labor or services of a person . . .
> (1) by means of by means of force, threat of force, physical restraint, or threats of a physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of . . . threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

Further, the statute makes culpable anyone:

> (b) Who[] knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means describes in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means . . .
> (c) In this section
> (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law whether administrative civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.
> (2) The term "serious harm" means any harm, including physical, or nonphysical, including psychological, financial, or reputation harm, that is sufficiently serious under all the surrounding circumstances to compel a reasonable person of the same

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

Although the TVPA is primarily a criminal statute, a civil action for damages and attorney's fees may be brought. 18 U.S.C. § 1595. Congress intended 18 U.S.C. § 1589 to "reach cases in which persons are held in a condition of servitude through nonviolent coercion" as well as through "physical or legal coercion". *U.S. v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011). Congress intended to address cases "where traffickers threaten harm to third persons . . . or threaten dire consequences by means other than overt violence. *Id.* at 1170, *citing* H.R. Rep. No. 106-939, at 101 H.R.Rep. No. 106-939, at 101, 2000 U.S.C.C.A.N. at 1392-93 (Conf.Rep.).

The evidence will show that the two Gutierrez brothers were detained at the border by force by the *coyote* that Defendant Cherimnov arranged to bring them, and the Gutierrez brothers were threatened with harm, with deportation, and with serious consequences for their families in Mexico by Defendant Cherimnov and his agents. These threats caused Plaintiffs reasonably to fear serious harm to themselves and their families, particularly in light of their experience of violence in their *rancho* in Mexico and their experiences with coming to the United States.

When considering harm, the Court must ask whether the threat is sufficiently serious to compel that person to remain, from the vantage point of a reasonable person in the place of the victim. *Dann*, 652 F.3d at 1170. The court must also "consider the particular vulnerabilities of a person in the victim's position." *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015).

The threat of deportation due to the violation of immigration law is an abuse of legal process because "the immigration laws do not aim to help employers retain secret employees by threats of deportation, and so their 'warnings' about the consequences [are] directed to an end different from those envisioned by the law and were thus an abuse of legal process. *U.S. v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008). The "threat alone --to be forced to leave the

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029

country-- could constitute serious harm to an immigrant". *Dann*, 652 F.3d at 1172. *See also Calimlim*, 538 F.3d at 710 (finding that defendants caused the individual to believe that she might be deported and her family seriously harmed because she would no longer be able to send money to her family).

Defendants will claim that they had nothing to do with smuggling Plaintiffs into the country or the actions of the *coyote* in transit or at the border. Plaintiffs will strongly contest this assertion factually. However, even if this assertion is believed, Defendants clearly knew about abuse by the *coyote* at the border, and nonetheless profited from the Gutierrez brothers employment in violation of 18 U.S.C. § 1589 (b).

### H. Oregon law also provides a similar civil remedy for trafficking

Plaintiffs Francisco and Moises Gutierrez-Flores may also recover under similar Oregon statutes, including for punitive damages. *See*, ORS §§ 30.867; 137.103; 161.085; 163.263; 163.264; 163.266.

## IV. CONCLUSION

Plaintiffs are entitled to recover damages as alleged in their Complaint.

Respectfully submitted this 14th of November, 2019, by:

s/ Mayra A. Ledesma
Mayra A. Ledesma, OSB# 183942
D. Michael Dale, OSB# 771507
Northwest Workers' Justice Project
812 SW Washington St, Suite 225
Portland, OR 97205
Tel: (503) 525-8454
Fax: (503) 946-3029

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **PLAINTIFFS' AMENDED TRIAL MEMORANDUM** via:

☐Electronic Mail

☐US Postal Service

☒CM/ECF

☐Facsimile Service

☐Hand Delivery

☐UPS

as follows on the date stated below:

Mark A. Crabtree
Daniel J. Moses
Jackson Lewis, P.C.
200 SW Market Street, Suite 540
Portland, OR 97201

*Attorneys for Defendants*

DATED this 14th of November, 2019.

By: s/ Mayra A. Ledesma

**Northwest Workers' Justice Project**
812 SW Washington St, Ste 225
Portland, OR 97205
Ph. (503) 525-8454
Fax: (503) 946-3029